## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| v. | ) ) Crim. No. 16-0196 (ESH) |
| CHARLES MORGAN, | ) ) ) |
| Defendant. | ) ) ) |

### MEMORANDUM OPINION

A nine-count indictment charges defendant Morgan with failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a) (Count One); kidnapping, in violation of 18 U.S.C. § 1201(a)(1), (g) (Count Two); transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a) (Count Five); attempted production of child pornography, in violation of 18 U.S.C. § 2251(a), (e) (Count Eight); three counts of commission of a felony offense by an individual required to register as a sex offender, in violation of 18 U.S.C. § 2260A (Counts Three, Six, and Nine); and two counts of commission of a crime of violence while failing to register as a sex offender, in violation of § 2250(d) (Counts Four and Seven).[1]  Defendant has moved to preclude the government from asking the victim to make an in-court identification, because she was unable to identify him in a photo array shortly after the incident.  (Def.'s Mot. Preclude In-Court Identification of Def. Morgan at 1, ECF No. 20.)  Because the Court concludes that an in-court identification by the victim would be sufficiently reliable for admission, it will deny defendant's motion.

---

[1] The indictment cites § 2250(c) for commission of a crime of violence while failing to register as a sex offender, but Congress re-designated that section as § 2250(d) as of Feb. 8, 2016.

## BACKGROUND

According to the government, the evidence at trial will show the following facts relevant to this motion: Defendant approached J.T., a fifteen-year-old minor female, in his car at approximately 11:30 p.m. on May 22, 2016.  (Gov.'s Opp. at 1, ECF No. 27.)  He asked her if she needed a ride and gave her his business card, and she got into the car.  (*Id.*)  He stopped the car on the side of a road and sexually assaulted J.T. in the car.  (*Id.* at 2.)  Thereafter, he took her to his house, where he assaulted her again.  (*Id.*)  Afterward, he gave her a piece of paper with his telephone number and the name "Mr. C" on it, told her to text him when she got home, and warned her not to tell anyone about what he had done.  (*Id.*)

J.T. reported the assault to her mother, who contacted 911.  (*Id.*)  On May 24, 2016, a member of the Prince George's County Police Department presented J.T. with a six-person consecutive photo array containing six colored, photocopied images of African-American men of similar ages and characteristics.  (*Id.* at 2-3.)  The array included a fuzzy image of defendant, but J.T. was unable to identify anyone in the photo array as the man who had assaulted her.  (*Id.*; Prince George's County Police Dep't Sexual Assault Unit Photo Viewing Sheet, Attachment to Def.'s Reply, ECF No. 35-1.)

Defendant contends that the prosecution should not be permitted to ask the victim to identify her assailant at trial, where defendant will be the only African-American man at counsel table, because the victim's inability to identify defendant in the photo array shortly after the incident makes any in-court identification unreliable.  (Def.'s Mot. at 2-3).  Defendant does not dispute "the prolonged nature and close proximity of the interaction," but he argues "[i]t is that very fact that renders the in court identification suspect because it highlights her failure to identify him immediately after the incident . . . ."  (Def.'s Reply at 1-2, ECF No. 35.)

2

## ANALYSIS

**I.     Legal Standard**

To evaluate whether the Due Process Clause bars admission of identification evidence, courts use a two-pronged test. *United States v. Rattler*, 475 F.3d 408, 411 (D.C. Cir. 2007). "A court must determine first, whether the identification procedure 'was impermissibly suggestive.'" *Id.* (quoting *United States v. Washington*, 12 F.3d 1128, 1134 (D.C. Cir. 1994)). "[I]f so, [it must determine] second, whether, under the totality of the circumstances, the identification was sufficiently reliable to preclude 'a very substantial likelihood of irreparable misidentification.'" *Id.* (quoting *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977)). Although the Supreme Court and the D.C. Circuit have developed this test in the context of out-of-court identification procedures, most federal courts have applied the same test to initial in-court identifications (i.e., identifications that are made for the first time in court). *See, e.g.*, *Lee v. Foster*, 750 F.3d 687, 691-92 (7th Cir. 2014); *United States v. Greene*, 704 F.3d 298, 305-10 (4th Cir. 2013); *Kennaugh v. Miller*, 289 F.3d 36, 45-48 (2d Cir. 2002); *United States v. Rogers*, 126 F.3d 655, 658-59 (5th Cir. 1997); *United States v. Hill*, 967 F.2d 226, 232 (6th Cir. 1992); *but see United States v. Domina*, 784 F.2d 1361, 1367-69 (9th Cir. 1986) (distinguishing in-court identifications from pretrial ones because the jury can observe the witness, but still acknowledging that an in-court identification could be so unnecessarily suggestive as to violate due process). As the Sixth Circuit explained, "any attempt to draw a line based on the time the allegedly suggestive identification technique takes place seems arbitrary. All of the concerns . . . , including the degree of suggestiveness, the chance of mistake, and the threat to due process are no less applicable when the identification takes place for the first time at trial." *Hill*, 967 F.2d at 232.

**II.      Suggestiveness**

The "impermissibly suggestive" prong of the test comes from a line of Supreme Court precedent including *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972), in which the Court held that "unnecessary suggestiveness" did not automatically require exclusion of identification evidence but required an evaluation of whether "the identification was reliable even though the confrontation procedure was suggestive."  In a recent opinion addressing out-of-court identifications, the Court clarified that "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Perry v. New Hampshire*, 565 U.S. 228, 248 (2012).  Since the jury is ordinarily the arbiter of reliability, the purpose of requiring a judicial reliability analysis for certain identifications is to discourage improper law enforcement conduct. *Id.* at 237, 241-42.  Furthermore, the Court expressed concern that requiring evaluations of reliability whenever an identification is suggestive would "involve trial courts, routinely, in preliminary examinations" because "[m]ost eyewitness identifications involve some element of suggestion.  Indeed, all in-court identifications do." *Id.* at 244.  Thus, the Court concluded that a reliability screen is necessary only when an identification has "the taint of improper state conduct." *Id.* at 245.  To find an identification procedure impermissibly suggestive after *Perry*, a court must determine that it is (1) suggestive, (2) unnecessary, and (3) arranged by law enforcement.

Circuit courts have split as to whether it is impermissibly suggestive for a witness to make an in-court identification when it is obvious which person is the defendant.  The Second Circuit has held that it is "obviously suggestive to witnesses asked to make in-court identifications" that "the defendant here was seated next to defense counsel," so "[a]ny witness

4

. . . can determine which of the individuals in the courtroom is the defendant." *United States v. Archibald*, 734 F.2d 938, 941-43 (2d Cir. 1984), *modified by United States v. Archibald*, 756 F.2d 223, 223 (2d Cir. 1984) (noting that defendants wishing to take advantage of its ruling must "move[] in a timely manner prior to trial for a lineup"). Likewise, the Fifth Circuit has concluded that "it is obviously suggestive to ask a witness to identify a perpetrator in the courtroom when it is clear who is the defendant." *Rogers*, 126 F.3d at 658. The Third Circuit reached the same conclusion under more egregious circumstances, where U.S. marshals walked a defendant in shackles before the key identification witnesses, who then discussed the fact that it must be the defendant. *United States v. Emanuele*, 51 F.3d 1123, 1128-30 (3d Cir. 1995). Because these cases pre-dated *Perry*, none of them discussed its applicability.

Since *Perry*, several circuit courts have decided that it is not impermissibly suggestive to obtain in-court identifications when it is obvious which person is the defendant. Relying on *Perry*, the Tenth and Eleventh Circuits both concluded that in-court identifications of the defendants, in each case the only African-American man at counsel table, did not warrant judicial reliability assessments because they were not the product of improper conduct by law enforcement. *United States v. Thomas*, 849 F.3d 906, 910-11 (10th Cir. 2017); *United States v. Whatley*, 719 F.3d 1206, 1216 (11th Cir. 2013). In an unpublished opinion, the Sixth Circuit similarly relied on *Perry* to conclude that the in-court identification of the defendant, the only African-American male in the courtroom, was not impermissibly suggestive because "the Supreme Court has recently made clear that due process rights of defendants identified in the courtroom under suggestive circumstances are generally met through the ordinary protections in trial." *United States v. Hughes*, 562 Fed. App'x 393, 398 (6th Cir. 2014). The First Circuit found no need to decide whether *Perry* applied to in-court identifications, because it would admit

5

the identification either way: under *Perry*, there was no due process problem because "the government did not put [the defendant]" at counsel table, and without *Perry*, there was still no undue suggestiveness because the identification procedure was not particularly suggestive compared to other in-court identifications. *United States v. Correa-Osorio*, 784 F.3d 11, 19-22 (1st Cir. 2015). However, the court noted as an example that "[a]n in-court identification may be unduly suggestive . . . if the defendant looked different from others in the courtroom or at counsel table . . . (say, by being the only black person present)," *id.* at 21, so it might reach a different result on Morgan's motion. Without discussing *Perry*'s ruling about the role of law enforcement, the Seventh Circuit found that an in-court identification of the defendant was not impermissibly suggestive because it was "neither suggestive nor unnecessary," although its explanation related more to reliability than to suggestiveness. *Lee*, 750 F.3d at 691-92.

      This Court agrees with the Second, Third, and Fifth Circuits that it is suggestive to ask a witness to identify the perpetrator of the charged crime when it is obvious to that witness which person is on trial for committing that crime. Here, there will be no doubt that the African-American man seated at counsel table is being prosecuted for crimes against J.T. Furthermore, it is unnecessary for the prosecution to seek its first identification of defendant at trial, since the prosecution could easily have arranged a pretrial lineup.

      Finally, this Court disagrees with the Tenth and Eleventh Circuits' conclusion that initial in-court identifications are automatically permissible under *Perry*, without any reliability screening. *See United States v. Thomas*, No. 15-20487, 2015 WL 8478463, at *2-*3 (E.D. Mich. Dec. 10, 2015) (concluding that in-court identifications can still be impermissibly suggestive after *Perry* and moving on to the reliability prong). An in-court identification of defendant would be "arranged by law enforcement," *Perry*, 565 U.S. at 248, because the government chose

6

to bring this particular defendant to trial and would be choosing to ask the witness for an identification at his trial.  To ask for such an identification would be "improper" government conduct, *id.* at 245, if the government did not have a basis for believing that the witness could make a reliable identification.[2]  Although the Supreme Court implied in *Perry* that it did not want *all* in-court identifications to be subject to judicial reliability screening, *see id.* at 244, due process concerns require such screening for an initial in-court identification that is equivalent to a one-man showup.  Because an initial in-court identification of defendant by J.T. would be suggestive, unnecessary, and arranged by law enforcement, the Court concludes that it would be impermissibly suggestive and thus, it is admissible only if it is reliable.

## III.    Reliability

Under the second prong of the test, the court must determine whether an identification is "sufficiently reliable to preclude 'a very substantial likelihood of irreparable misidentification.'" *Rattler*, 475 F.3d at 411 (quoting *Manson*, 432 U.S. at 116).  "The factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.  Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson*, 432 U.S. at 114.

---

[2] The Court paraphrased its standard in *Perry* as requiring "improper" law enforcement conduct before a reliability analysis of an out-of-court identification procedure is necessary, 565 U.S. at 245, but it is not clear that the label makes sense for in-court identifications.  Whereas law enforcement should always strive to minimize the suggestiveness of pretrial identification procedures and thus acts improperly when it fails to do so, it cannot change the fact that in-court identifications are inherently suggestive.  Whether asking for an in-court identification is proper, despite its suggestiveness, depends on whether the identification is reliable or merely an attempt to circumvent the due process constraints on one-man showups.

Courts have disagreed about whether a witness's failure to identify the defendant in a pretrial photo array makes her subsequent in-court identification unreliable. In the Seventh Circuit, "the fact that a witness could not positively identify the defendant in a pre-trial identification procedure does not automatically render that witness's subsequent in-court identification inadmissible." *United States v. Miller*, 795 F.3d 619, 628-29 (7th Cir. 2015); *Lee*, 750 F.3d at 690-92; *Johnson v. McCaughtry*, 92 F.3d 585, 597 (7th Cir. 1996). Although such an in-court identification "may not [be] especially convincing," it is admissible when the defense has an "adequate opportunity to cross examine [the witness] and to make clear to the jury that [the witness] was unable to pick [the defendant] out of the photo array." *Johnson*, 92 F.3d at 597. In one case, the Seventh Circuit supported its reliability finding by pointing to facts suggesting that the witness had an opportunity to observe the defendant. *Lee*, 750 F.3d at 692. In contrast, the Third Circuit concluded that the "failure [of the witness to identify the defendant's photo in the array], coupled with the highly suggestive viewing of the defendant in conditions reeking of criminality [because he was escorted by her in shackles], bolstered by the comments of another witness, render the in-court identification unreliable." *Emanuele*, 51 F.3d at 1131. According to that court, the witness's "protracted and clear view of the robber highlight[ed] [her] failure to select defendant's photo in the array." *Id.* at 1130.

Here, the victim, J.T., had close contact with her assailant for an extended period of time and was able to report on their interactions in detail, so there is good reason to believe that she knows what he looks like. This interaction was much more extensive than what the witness had with the robber in *Emanuele*. *See Emanuele*, 51 F.3d at 1127 (stating that the witness had "several minutes" to observe the robber). Furthermore, it would have been difficult for J.T. to provide a positive identification based on the photo array, because the photo was blurry. In

8

contrast, the court in *Emanuele* did not identify any problems with the defendant's photograph in the array.  *See id.* at 1127, 1129-31.  It would be easier for J.T. to recognize her assailant in person than in the fuzzy photograph.  Therefore, her inability to identify defendant in the photo array after the incident does not undermine the reliability of a potential in-court identification.  The fact that the trial will be about one year after the incident does not bolster the reliability of an in-court identification, but it does not destroy it either, since it is routine for the jury to need to weigh the reliability of witnesses' recollections after that length of time.  *See, e.g.*, *Miller*, 795 F.3d at 629 (finding no due process violation in identification 18 months after incident, despite failure to identify defendant during pretrial procedure); *Lee*, 750 F.3d at 692 (finding identification reliable nine months after the incident, despite failure to identify defendant in pretrial photo array).  In sum, if J.T. is able to identify defendant with confidence at trial, that identification will be sufficiently reliable that it should be admitted, so that the jury can evaluate its reliability.

## CONCLUSION

For the reasons discussed above, defendant's motion to preclude in-court identification of defendant Charles Morgan is denied.

/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date:   April 4, 2017