UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | )
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| v. | ) Crim. No. 16-0196 (ESH) |
| | ) |
| **CHARLES MORGAN,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM OPINION

A nine-count indictment charges defendant Morgan with failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a) (Count One); kidnapping, in violation of 18 U.S.C. § 1201(a)(1), (g) (Count Two); transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a) (Count Five); attempted production of child pornography, in violation of 18 U.S.C. § 2251(a), (e) (Count Eight); three counts of commission of a felony offense by an individual required to register as a sex offender, in violation of 18 U.S.C. § 2260A (Counts Three, Six, and Nine); and two counts of commission of a crime of violence while failing to register as a sex offender, in violation of § 2250(d) (Counts Four and Seven). (Indictment, ECF No. 15.)[1] Defendant has moved to dismiss all of the registration-related counts (Counts One, Three, Four, Six, Seven, and Nine) based on the Administrative Procedure Act, the non-delegation doctrine, the Ex Post Facto Clause, and the Commerce Clause. (Def.'s Mot., ECF No. 22.) For the reasons described herein, the Court will deny defendant's motion.

---

[1] The indictment cites § 2250(c) for commission of a crime of violence while failing to register as a sex offender. Congress re-designated that section as § 2250(d) as of Feb. 8, 2016.

## BACKGROUND

According to the government, defendant was convicted of Rape while Armed in 1991 in the Superior Court for the District of Columbia. (Gov.'s Opp. at 1, ECF No. 29.) He was released from incarceration in 2009. (*Id.*) In the interim, in 2006, Congress passed the Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. § 16901 *et seq.* SORNA requires sex offenders to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." *Id.* § 16913(a). It is a criminal offense for someone who is subject to the Act's registration requirements to travel in interstate commerce and then fail to update his registration as required. *See* 18 U.S.C. § 2250(a).

When Congress passed SORNA, it directed that "[t]he Attorney General shall have the authority to specify the applicability of [SORNA] to sex offenders convicted before [its] enactment." 42 U.S.C. § 16913(d). Thus, "the Act's registration requirements do not apply to pre-Act offenders until the Attorney General so specifies." *Reynolds v. United States*, 565 U.S. 432, 445 (2012). On three different occasions, the Attorney General issued rules or guidelines stating that SORNA applies to pre-Act offenders. *See United States v. Ross*, 848 F.3d 1129, 1131-32 (D.C. Cir. 2017). These are a 2007 Interim Rule, 2008 Final Guidelines, and a 2010 Final Rule. *See* Applicability of the Sex Offender Registration and Notification Act, 72 Fed. Reg. 8894, 8897 (Feb. 28, 2007) ("Interim Rule"); The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030, 38035-36 (July 2, 2008) ("Final Guidelines"); Applicability of the Sex Offender Registration and Notification Act, 75 Fed. Reg. 81849, 81850 (Dec. 29, 2010) (codified at 28 C.F.R. pt. 72) ("Final Rule").

The indictment charges defendant with failure to register, crimes of violence while failing to register, and felonies while required to register, all based on his alleged conduct between 2015 and 2016. (Indictment at 1-5.) According to the indictment, defendant was subject to registration requirements as a result of his 1991 conviction for Rape while Armed. (*Id.* at 2.) Defendant has moved to dismiss all counts that have a registration requirement as an element. (Def.'s Mot. at 1.) First, he argues that the Attorney General's attempts to specify the application of SORNA to pre-Act offenders violated the Administrative Procedure Act. (*Id.* at 4-7.) Second, he contends that Congress violated the non-delegation doctrine when it gave the Attorney General the authority to make SORNA retroactive. (*Id.* at 7-9.) Third, he maintains that the Ex Post Facto Clause prohibits applying SORNA's registration requirements and criminal penalties to offenders who committed their sex offenses before the enactment of SORNA. (*Id.* at 9-17.) Finally, he claims that criminalizing failure to register exceeded Congress's powers under the Commerce Clause. (*Id.* at 17-19.)

## ANALYSIS

**I.     ADMINISTRATIVE PROCEDURE ACT**

Relying on the D.C. Circuit's recent opinion in *Ross*, 848 F.3d 1129, defendant asserts that none of the Attorney General's attempts to apply SORNA to pre-Act offenders complied with the Administrative Procedure Act (APA). (Def.'s Mot. at 4-7.) This Court disagrees. *Ross* invalidated only the 2007 Interim Rule and the 2008 Final Guidelines. The reasoning in *Ross* does not extend to the 2010 Final Rule, which predated the conduct charged in this case.

In *Ross*, the D.C. Circuit held that the government could not prosecute a defendant with a pre-SORNA sex offense conviction for his failure to register in 2009, because neither the 2007 Interim Rule nor the 2008 Final Guidelines had satisfied the requirements of the APA. 848 F.3d

3

at 1131-32.  The adequacy of the 2010 Final Rule was not before the Court in *Ross*, because that rule could not support a prosecution for failure to register in 2009.  *See id.*  Beginning with the 2007 Interim Rule, the Court concluded that it was inadequate because the Attorney General "issued the rule without providing for advance notice or inviting comment, as required by the APA."  *Id.* at 1132.  Turning to the 2008 Final Guidelines, the Court held that it could not uphold them as a discretionary decision by the Attorney General because he "disclaimed any authority to decide for himself whether SORNA applied to pre-enactment offenders."  *Id.* at 1134.  Rather, the Attorney General stated that SORNA had "applied since [its enactment] to all sex offenders, including those whose convictions predate SORNA's enactment," and he "could not" depart from Congress's legislative judgment that the requirements were justified.  *Id.* (quoting Final Guidelines, 73 Fed. Reg. at 38035, 38046).

Contrary to defendant's argument, the reason for invalidating the 2008 Final Guidelines does not apply to the 2010 Final Rule.  In dicta, the *Ross* Court rejected the same argument that defendant now makes, explaining that the Final Rule "did recognize [the Attorney General's] authority, albeit reluctantly and contingently: 'Congress at the very least placed it within the Attorney General's discretion to apply SORNA's requirements to [pre-SORNA offenders] if he determines (as he has) that the public benefits of doing so outweigh any adverse effects.' *Final Rule*, 75 Fed. Reg. at 81850/3."  *Ross*, 848 F.3d at 1137.  When the Attorney General issued the Final Rule, he provided two alternative grounds for the regulation.  He stated that the Final Rule's application of SORNA's requirements to sex offenders with pre-SORNA convictions had "a sound legal basis, regardless of whether (i) SORNA's requirements apply of their own force to sex offenders with pre-SORNA convictions, and the interim rule merely confirmed that fact, or (ii) the applicability of SORNA's requirements to sex offenders with pre-SORNA convictions

4

depends on rulemaking by the Attorney General." Final Rule, 75 Fed. Reg. at 81850-51. To support his judgment under the second scenario, he observed that "the interests opposing and supporting registration—any adverse effect or burden of SORNA's requirements on sex offenders weighed against the public safety interests furthered by those requirements—are much the same whether the class of sex offenders with pre-SORNA convictions or the class of sex offenders with post-SORNA convictions is considered." *Id.* He concluded that he was "justified . . . in exercising his authority to 'specify the applicability of the requirements of [SORNA] to sex offenders convicted before the enactment' of SORNA, 42 U.S.C. 16913(d) . . . ." *Id.* Thus, the Attorney General was clear that if he had discretion to determine the applicability of SORNA, he was exercising it to apply the requirements to pre-SORNA offenders. Because the 2010 Final Rule contains the Attorney General's discretionary judgment, it does not share the flaw in the 2008 Final Guidelines that caused the *Ross* Court to find the latter invalid under the APA.

## II. NON-DELEGATION DOCTRINE

Next, defendant contends that Congress violated the non-delegation doctrine when it directed that "[t]he Attorney General shall have the authority to specify the applicability of [SORNA] to sex offenders convicted before [its] enactment," 42 U.S.C. § 16913(d), but "failed to articulate any policy to guide" that determination. (Def.'s Mot. at 8.) Applying the established intelligible-principle test, this Court will follow the other circuits, which have uniformly held that this delegation was permissible.

Although the D.C. Circuit has not decided the non-delegation question, *every* other circuit has addressed it and has determined that it was constitutional for Congress to delegate the authority to the Attorney General to decide whether SORNA should apply to pre-Act offenders.

5

*Ross*, 848 F.3d at 1131 (citing *United States v. Nichols*, 775 F.3d 1225, 1231 (10th Cir. 2014), *rev'd on other grounds*, 136 S.Ct. 1113 (2016); *United States v. Richardson*, 754 F.3d 1143, 1146 (9th Cir. 2014); *United States v. Cooper*, 750 F.3d 263, 271-72 (3d Cir. 2014); *United States v. Goodwin*, 717 F.3d 511, 516-17 (7th Cir. 2013); *United States v. Kuehl*, 706 F.3d 917, 920 (8th Cir. 2013); *United States v. Sampsell*, 541 Fed. App'x 258, 259-60 (4th Cir. 2013); *United States v. Parks*, 698 F.3d 1, 7-8 (1st Cir. 2012); *United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012); *United States v. Guzman*, 591 F.3d 83, 92-93 (2d Cir. 2010); *United States v. Whaley*, 577 F.3d 254, 262-64 (5th Cir. 2009); *United States v. Ambert*, 561 F.3d 1202, 1212-14 (11th Cir. 2009)). In this district, Judge Bates has also rejected a defendant's non-delegation challenge. *United States v. Cotton*, 760 F. Supp. 2d 116, 135 (D.D.C. 2011).

This Court agrees that the SORNA delegation to the Attorney General satisfies the test that the Supreme Court has set out to evaluate congressional delegations. "So long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" *Mistretta v. United States*, 488 U.S. 361, 372 (1989) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)). The Supreme Court "has deemed it 'constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.'" *Id.* at 372-73 (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)). In applying this test, the Court has been "driven by a practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Id.* at 372.

Mindful of this principle, the Court has not struck down a statute under the non-delegation doctrine since 1935. *Cooper*, 750 F.3d at 268-70.

The SORNA delegation easily satisfies the second and third prongs of the Supreme Court's three-part test. Congress specified that the Attorney General would have the delegated authority, 42 U.S.C. § 16913(d), thus fulfilling the requirement that Congress delineate "the public agency" to exercise the delegated authority, *Mistretta*, 488 U.S. at 372-73. *See Cooper*, 750 F.3d at 272; *Goodwin*, 717 F.3d at 517. Congress also set "the boundaries of this delegated authority," *Mistretta*, 488 U.S. at 372-73, by directing the Attorney General to decide only "the specific question of whether SORNA's registration requirements apply to pre-SORNA sex offenders." *Cooper*, 750 F.3d at 272. SORNA "contains detailed directives regarding virtually every [other] aspect of the establishment of the national registry." *Goodwin*, 717 F.3d at 517.

Applying the first prong of the test — that Congress has "clearly delineate[d] the general policy" to guide the delegation, *Mistretta*, 488 U.S. at 372-73 — is more challenging. Section 16913, which contains the delegation, does not give the Attorney General any guiding principle or factors to consider. Courts searching for an intelligible principle have turned to SORNA's preamble, which explains that "[i]n order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators against the victims listed below, Congress in this chapter establishes a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901; *see Cooper*, 750 F.3d at 271; *Richardson*, 754 F.3d at 1145-46; *Goodwin*, 717 F.3d at 516; *Cotton*, 760 F. Supp. 2d at 135. According to the Seventh Circuit, "[t]his section provides sufficient guidance to the Attorney General for two reasons: (i) § 16901 conveys to the Attorney General that the delegated authority should be exercised with the goal of 'protect[ing] the public' from a specific class of criminals; and

7

(ii) § 16901 notifies the Attorney General that he or she should act in a manner that furthers Congress's objective of a 'comprehensive' registration system." *Goodwin*, 717 F.3d at 516.

This Court agrees with the Third Circuit's appraisal of § 16901: "Although we acknowledge that SORNA's policy statement is broad and does not contain directives specifically aimed at the Attorney General, review of the history of the nondelegation doctrine reveals that far less precise policy statements have still passed muster." *Cooper*, 750 F.3d at 271-72 (citing *Am. Power & Light*, 329 U.S. at 105; *Yakus v. United States*, 321 U.S. 414, 420-23 (1944)). In *Yakus*, the Court upheld a delegation to an executive official to set "fair and equitable" commodity prices, with the purpose of stabilizing prices and with due consideration for the prevailing prices during a certain time period. 321 U.S. at 419-27. Similarly, in *American Power & Light*, the Court upheld a delegation to the SEC to take such actions as necessary to prevent companies from "unfairly or inequitably distribut[ing] voting power among security holders." 329 U.S. at 104-05. The Court explained that "[t]hese standards are certainly no less definite in nature than those speaking in other contexts in terms of 'public interest,' 'just and reasonable rates,' 'unfair methods of competition' or 'relevant factors.' The approval which this Court has given in the past to those standards thus compels the sanctioning of the ones in issue." *Id.* Because the Supreme Court has taken such a broad view of what constitutes an intelligible principle, this Court has no basis for rejecting the delegation in SORNA.

Justice Scalia has pointed out that the SORNA delegation "seems to me sailing close to the wind with regard to the principle that legislative powers are nondelegable." *Reynolds*, 565 U.S. at 450 (Scalia, J., dissenting). Taking a step further, then-Judge Gorsuch argued in a dissenting opinion that the SORNA delegation violates the non-delegation doctrine because "[i]f the separation of powers means anything, it must mean that the prosecutor isn't allowed to define

8

the crimes he gets to enforce." *United States v. Nichols*, 784 F.3d 666, 668 (2015) (Gorsuch, J., dissenting from denial of rehearing en banc). He would hold delegations in the criminal context to a higher standard. *Id.* at 672-76. It is true that the Supreme Court once said it "need not resolve" whether "greater congressional specificity is required in the criminal context." *Touby v. United States*, 500 U.S. 160, 165-66 (1991). But because the Supreme Court has invoked the intelligible-principle test in both civil and criminal cases, *see, e.g.*, *Mistretta*, 488 U.S. at 372-73, and it has never held that a higher standard applies in the criminal context, this Court applies the intelligible-principle test. *See Cooper*, 750 F.3d at 271 ("Until the Supreme Court gives us clear guidance to the contrary, we assess the delegation of authority to the Attorney General in 42 U.S.C. § 16913(d) under an intelligible principle standard."). Under that test, Congress did not violate the non-delegation doctrine when it gave the Attorney General the authority to decide whether SORNA's registration requirements applied to pre-Act offenders.

## III. EX POST FACTO CLAUSE

Because the registration-related counts against defendant charge crimes or sentencing enhancements that did not exist until 2006, but that rely upon defendant's sex offense conviction from 1991, defendant argues that those counts violate the Ex Post Facto Clause. (Def.'s Mot. at 9-17.) The Ex Post Facto Clause, U.S. Const. art. I, § 9, cl. 3, bars "retroactive punishment." *Smith v. Doe*, 538 U.S. 84, 92 (2003). That is, it prohibits Congress from enacting any law that "imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quoting *Cummings v. Missouri*, 71 U.S. 277, 325-26 (1867)). None of the three registration-related statutory provisions charged in the indictment is both punitive and retroactive, so there is no ex post facto violation.

9

### A. Failure to Register (18 U.S.C. § 2250(a))

In Count One, the government charges defendant with violating 18 U.S.C. § 2250(a). Section 2250(a) imposes liability on a person who (1) "is required to register under the Sex Offender Registration and Notification Act," (2) "travels in interstate or foreign commerce," and (3) "knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act." The interstate travel must post-date the enactment of SORNA, and the failure to register must occur after the travel. *Carr v. United States*, 560 U.S. 438, 446 (2010). At defendant's trial, the government intends to show that he moved from Washington, D.C., to Maryland in April 2015 and resided there until his arrest in July 2016, but he failed to register his new residence in either D.C. or Maryland. (Gov.'s Opp. at 1-2, 20.) A conviction under § 2250(a) would not subject defendant to any mandatory minimum sentence, but Congress has authorized a prison sentence of up to ten years.

There is a consensus among circuits that prosecution under § 2250(a) for failure to register, when registration was required because of a pre-SORNA conviction, does not violate the Ex Post Facto Clause. *See, e.g.*, *United States v. Parks*, 698 F.3d 1, 4-6 (1st Cir. 2012); *United States v. Elkins*, 683 F.3d 1039, 1043-45 (9th Cir. 2012); *United States v. Felts*, 674 F.3d 599, 605-06 (6th Cir. 2012); *United States v. Leach*, 639 F.3d 769, 772-73 (7th Cir. 2011); *United States v. May*, 535 F.3d 912, 920 (8th Cir. 2008), *abrogated on other grounds by Reynolds*, 565 U.S. 432. Judge Bates in this district has agreed. *Cotton*, 760 F. Supp. 2d at 119, 137-38. As the Seventh Circuit has pointed out, a complete ex post facto analysis for § 2250(a) must consider (1) whether "the criminal penalties under 18 U.S.C. § 2250(a) are retroactive" (because there is no question that they are punitive) and (2) whether "the registration requirements under 42 U.S.C. § 16913 constitute punishment" (because there is no question that

they are retroactive, since they are based exclusively on commission of a prior sex offense). *Leach*, 639 F.3d at 772. Applying Supreme Court and other circuits' precedent on punishment and retroactivity to address these two questions, this Court agrees with other courts' rejection of ex post facto challenges to § 2250(a).

First, the Court will address whether the registration requirement is punitive. The foundation for this analysis is the Supreme Court's decision in *Smith*, where it held that Alaska's sex offender registration requirement was not punitive and therefore did not violate the Ex Post Facto Clause. 538 U.S. 84. Under the Alaska Sex Offender Registration Act, offenders convicted of a single nonaggravated sex crime must register annually for 15 years, while those with aggravated or multiple offenses must register quarterly and for life. *Id.* at 90. Offenders' names, photographs, addresses, crimes, and other information are to be available to the public, which Alaska has chosen to accomplish by publishing the information on the internet. *Id.* at 91. To determine whether the Alaska statute had a punitive effect, the Supreme Court identified the following relevant factors: "whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *Id.* at 97. The Court concluded that "[o]ur system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment," and the periodic reporting requirement (which did not mandate in-person appearances) did not impose an affirmative disability. *Id.* at 98, 101. Most significantly, the Court explained, the statute had the nonpunitive purpose of advancing public safety and a rational connection to that nonpunitive purpose. *Id.* at 102-03.

Other courts have concluded that they are "unable to find any meaningful distinctions" from the Alaska statute that would render SORNA's registration requirement punitive. *Leach*, 639 F.3d at 773; *see Parks*, 698 F.3d at 6; *Cotton*, 760 F. Supp. 2d at 136-38. Defendant argues that SORNA is punitive because it requires publication on the internet; directs states to notify schools, public housing agencies, and any organization that requests notification; mandates in-person reporting; and provides for a penalty of up to ten years for a first-time failure to report. (Def.'s Mot. at 14-16.) Based on the Supreme Court's reasoning in *Smith*, however, none of these differences makes SORNA's registration requirement punitive. Although Alaska's statute did not mandate publication on the internet, Alaska's practice was to publish on the internet, and the *Smith* Court held that internet publication was not punitive. *Smith*, 538 U.S. at 99. *Smith* did not discuss notification of schools and other organizations, but it declared that "dissemination of truthful information in furtherance of a legitimate governmental objective" is not punishment. *Id.* at 98. In-person reporting is an inconvenience, but so is any registration requirement. Given that occasional in-person reporting is not very burdensome and would reasonably be expected to enhance the accuracy of reporting (which means it has a rational connection to a nonpunitive purpose), it does not make SORNA's registration requirement punitive. *See Parks*, 698 F.3d at 6; *Cotton*, 760 F. Supp. 2d at 137-38. Finally, the magnitude of the potential penalty for failure to register does not affect whether the registration requirement itself is punitive. Therefore, this Court joins the other courts that have concluded that SORNA's registration requirement is not punitive under the standards set out in *Smith*.[2]

---

[2] In a supplemental notice, defendant directed the Court's attention to *Does v. Snyder*, 834 F.3d 696 (6th Cir. 2016), which held that retroactive application of the Michigan Sex Offenders Registration Act violated the Ex Post Facto Clause. The "[m]ost significant" burden imposed by the Michigan statute was its "regulation of where registrants may live, work, and 'loiter.'" *Id.* at 703. Because registrants could not live, work, or loiter within 1000 feet of a school, they had

Of course, there is no doubt that a prison sentence of up to ten years for failure to register is punitive, and therefore, there could still be an ex post facto problem if the punishment for failure to register is retroactive. However, other circuits have uniformly concluded that having a pre-SORNA conviction does not make the punishment for failure to register retroactive. *See, e.g.*, *Elkins*, 683 F.3d at 1045; *Felts*, 674 F.3d at 605-06; *Leach*, 639 F.3d at 772-73; *May*, 535 F.3d at 920. "A sex offender violates the statute when, at any time *after* SORNA was enacted, he travels in interstate commerce and then fails to register. Because the law targets only the conduct undertaken by convicted sex offenders after its enactment, it does not violate the Ex Post Facto Clause." *Leach*, 639 F.3d at 773 (citation omitted). "The statute does not punish an individual for previously being convicted of a sex crime." *May*, 535 F.3d at 920. "SORNA provides for a conviction for failing to register; it does not increase the punishment for the past conviction." *Felts*, 674 F.3d at 606.

The reasoning that courts have used to conclude that punishment for failure to register is not retroactive is the same reasoning that courts, including the D.C. Circuit, have employed in the analogous situation of ex post facto challenges to felon-in-possession statutes. Felons whose convictions predated the enactment of felon-in-possession crimes have argued that prosecuting them for their possession violates the Ex Post Facto Clause. But the Seventh Circuit has responded that "[s]ections 922(g)(1) and 922(g)(9) are not ex post facto laws. . . . A law is not retroactive simply because it 'draws upon antecedent facts for its operation.'" *United States v. Hemmings*, 258 F.3d 587, 594 (7th Cir. 2001) (quoting *Cox v. Hart*, 260 U.S. 427, 435 (1922)).

---

trouble finding homes and jobs. *Id.* at 698. The Sixth Circuit concluded that these burdensome geographic restrictions resembled the traditional punishment of banishment, constituted an affirmative restraint, and were excessive in relation to the nonpunitive purpose. *Id.* at 701-05. In contrast, SORNA does not restrict where registrants can live, work, or loiter, *see* 42 U.S.C. § 16901 *et seq.*, and therefore, the reasoning in *Snyder* does not apply to SORNA.

13

Likewise, the Fourth Circuit has held that "[i]t is immaterial that [defendant]'s firearm purchase and domestic violence conviction occurred prior to § 922(g)(9)'s enactment because the conduct prohibited by § 922(g)(9) is the *possession* of a firearm." *United States v. Mitchell*, 209 F.3d 319, 322 (4th Cir. 2000). Once possession of a firearm by a felon was criminalized, a defendant had "adequate notice that it was illegal for him to possess a firearm because of his status as a convicted felon." *United States v. Brady*, 26 F.3d 282, 291 (2d Cir. 1994). In an unpublished opinion, the D.C. Circuit agreed that prosecution under § 922(g)(9) when the prior conviction predated that statute did not violate the Ex Post Facto Clause, because there was no showing "either that the law applied to events occurring before its enactment, or that it increased punishment for prior conduct." *United States v. Rivera*, 24 Fed. App'x 2, 3 (D.C. Cir. 2001) (citation omitted).

Because other circuits have held that § 2250(a) is not retroactive and the D.C. Circuit has approved the equivalent logic in the felon-in-possession context, this Court also holds that punishment for failure to register is not retroactive to the conviction that led to a defendant's registration requirement. Defendant's reliance on *United States v. Gillette*, 553 F. Supp. 2d 524 (D.V.I. 2008), is misplaced. Gillette's interstate travel had taken place before SORNA's enactment, and the court concluded that prosecution under § 2250(a) would therefore violate the Ex Post Facto Clause. *Id.* at 529. The court did not hold that having a pre-SORNA conviction created an ex post facto problem. In fact, the court summarized its holding as follows: "To succeed in a prosecution of 18 U.S.C. § 2250, the Government must show that the defendant both traveled in interstate commerce and failed to register as required after [the enactment of SORNA]." *Id.* at 533.

In sum, prosecuting defendant under § 2250(a) does not violate the Ex Post Facto Clause. SORNA's registration requirement is retroactive but not punitive, and its punishment for failure to register is punitive but not retroactive.

### B. Crime of Violence while Failing to Register (18 U.S.C. § 2250(d))

Under 18 U.S.C. § 2250(d), "[a]n individual described in subsection (a) . . . who commits a crime of violence under Federal law . . . shall be imprisoned for not less than 5 years and not more than 30 years." That punishment "shall be in addition and consecutive to the punishment provided for the violation described in subsection (a) . . . ." *Id.* In other words, an offender who is found guilty of failing to register under § 2250(a) is also subject to a sentencing enhancement of 5 to 30 years if he commits a crime of violence while failing to register. In the indictment, the government charges two counts under § 2250(d) (Counts Four and Seven) to correspond with the charges for kidnapping (Count Two) and transportation of a minor with intent to engage in criminal sexual activity (Count Five). Thus, defendant could be subject to a sentence of 5 to 30 years that would run consecutive to any sentence for § 2250(a). Note that Congress has not mandated that this sentence run consecutive to the sentences on the underlying crimes of violence.

Applying § 2250(d) to defendant does not pose an ex post facto problem. Assuming a defendant has been convicted under § 2250(a), the only requirement for the § 2250(d) enhancement is that he also committed a crime of violence. That additional requirement is unrelated to the prior conviction that requires him to register. Thus, § 2250(d) does not add any ex post facto issue that is not already present in § 2250(a). Since prosecuting defendant under § 2250(a) does not violate the Ex Post Facto Clause, neither does charging him with enhancements under § 2250(d).

15

### C. Felony while Required to Register (18 U.S.C. § 2260A)

In Counts Three, Six, and Nine, the government charges defendant under 18 U.S.C. § 2260A for committing felonies while required to register as a sex offender. Section 2260A provides that "[w]hoever, being required by Federal or other law to register as a sex offender, commits a felony offense involving a minor under section 1201, 1466A, 1470, 1591, 2241, 2242, 2243, 2244, 2245, 2251, 2251A, 2260, 2421, 2422, 2423, or 2425, shall be sentenced to a term of imprisonment of 10 years in addition to the imprisonment imposed for the offense under that provision. The sentence imposed under this section shall be consecutive to any sentence imposed for the offense under that provision." The government's three counts under § 2260A correspond to its charges for kidnapping (Count Two, 18 U.S.C. § 1201(a)(1), (g)), transportation of a minor with intent to engage in criminal sexual activity (Count Five, 18 U.S.C. § 2423(a)), and attempted production of child pornography (Count Eight, 18 U.S.C. § 2251(a), (e)). (Indictment at 2-5.) Thus, if defendant is convicted of kidnapping, transportation, or attempted production, the sentence for each of those crimes is subject to a mandatory consecutive ten-year sentencing enhancement based on defendant's status as someone who is required to register. This enhancement applies to anyone who is "required by Federal or other law to register as a sex offender," 18 U.S.C. § 2260A, not just those who fail to register.

In *United States v. Hardeman*, 704 F.3d 1266, 1268-69 (9th Cir. 2013), the Ninth Circuit held that application of § 2260A to defendants who committed their prior sex offenses before the enactment of SORNA does not violate the Ex Post Facto Clause. "The Supreme Court has long held that recidivism statutes do not violate the Ex Post Facto Clause because the enhanced penalty punishes only the latest crime and is not retrospective additional punishment for the original crimes." *Id.* at 1268. The result is no different when Congress uses a shorthand method

16

to refer to a category of prior crimes, as it did here, rather than specifying each prior crime that will lead to the enhancement. *Id.* at 1269. Supreme Court precedent compels this Court to reach the same result as the Ninth Circuit in *Hardeman*.

The constitutionality of applying a recidivist enhancement to pre-enactment offenders is firmly established. In *Gryger v. Burke*, 334 U.S. 728 (1948), the Supreme Court held that such recidivist enhancements do not violate the Ex Post Facto Clause. "The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Id.* at 732. Since *Gryger*, the Court has reiterated that "[e]nhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes that are commonplace in state criminal laws, do not change the penalty imposed for the earlier conviction." *Nichols v. United States*, 511 U.S. 738, 747 (1994). "When a defendant is given a higher sentence under a recidivism statute . . . 100% of the punishment is for the offense of conviction. None is for the prior convictions or the defendant's 'status as a recidivist.'" *United States v. Rodriquez*, 553 U.S. 377, 386 (2008). Citing *Gryger*, courts of appeals have repeatedly upheld recidivist statutes against ex post facto challenges. *See, e.g.*, *McCall v. Dretke*, 390 F.3d 358, 364-66 (5th Cir. 2004); *United States v. Forbes*, 16 F.3d 1294, 1302 (1st Cir. 1994); *United States v. Ahumada-Avalos*, 875 F.2d 681, 683-84 (9th Cir. 1989); *Covington v. Sullivan*, 823 F.2d 37, 38-40 (2d Cir. 1987).

There is no meaningful distinction between listing crimes that will subject a defendant to the recidivist enhancement and using a shorthand to describe which crimes will have that effect. When Congress enacted § 2260A, it described the enhancement as applicable to any offender

17

who is "required by Federal or other law to register as a sex offender." By using that terminology, Congress chose not to create its own list of prior offenses that would lead to the enhancement, but rather to adopt the lists of offenses contained in federal and state sex offender registration statutes. As the Second Circuit has explained, "*Gryger* recognized the authority of a state to enact an enhanced penalty for future conduct preceded by a criminal conviction obtained prior to enactment of the enhanced penalty. . . . The technique by which [the state] achieves this result has no constitutional significance." *Covington*, 823 F.2d at 39.

Because § 2260A is equivalent to a recidivist statute and such statutes are not considered retroactive when applied to offenders with pre-enactment convictions, enhancing defendant's sentence under § 2260A would not violate the Ex Post Facto Clause.

## IV.    COMMERCE CLAUSE

Defendant also challenges his prosecution for failure to register on the ground that 18 U.S.C. § 2250(a) exceeds Congress's power under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3. (Def.'s Mot. at 17-19.) According to defendant, a "sex offender's failure to register is an intrastate offense that does not affect interstate commerce and, therefore, cannot be regulated by Congress." (*Id.* at 19.) Contrary to defendant's argument, Congress has authority under the Commerce Clause and the Necessary and Proper Clause to criminalize failure to register after travel in interstate commerce.

Section 2250(a) provides for a conviction for failure to register when a person (1) "is required to register under the Sex Offender Registration and Notification Act," (2) "travels in interstate or foreign commerce," and (3) "knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act." The three elements must be read sequentially "to ensure a nexus between a defendant's interstate travel and his failure to

18

register as a sex offender." *Carr*, 560 U.S. at 446. Congress intended "to subject to federal prosecution sex offenders who elude SORNA's registration requirements by traveling in interstate commerce." *Id.* at 456. According to the government, defendant moved from Washington, D.C., to Maryland in April 2015 but never registered his new residence, which 42 U.S.C. § 16913 required him to do. (Gov.'s Opp. at 1-2, 20.)

The Supreme Court has identified "three broad categories of activity that Congress may regulate under its commerce power." *United States v. Lopez*, 514 U.S. 549, 558-59 (1995). Those are "the use of the channels of interstate commerce," "the instrumentalities of interstate commerce, or persons or things in interstate commerce," and "activities that substantially affect interstate commerce." *Id.*

Section 2250(a) is a valid exercise of the commerce power because it regulates the channels and instrumentalities of interstate commerce. *United States v. Coleman*, 675 F.3d 615, 620-21 (6th Cir. 2012); *Guzman*, 591 F.3d at 90; *United States v. Vasquez*, 611 F.3d 325, 330 (7th Cir. 2010); *Ambert*, 561 F.3d at 1210-11; *United States v. Gould*, 568 F.3d 459, 471-72 (4th Cir. 2009); *May*, 535 F.3d at 921-22; *Cotton*, 760 F. Supp. 2d at 139-40. It "falls squarely within the first two prongs of *Lopez* because it applies only to those failing to register or update a registration after traveling in interstate commerce." *Cotton*, 760 F. Supp. 2d at 139. "Interstate travel inherently involves use of the channels of interstate commerce . . . . Moreover, *Lopez* explicitly acknowledges Congress's power to regulate persons traveling in interstate commerce" under the instrumentalities prong. *Guzman*, 591 F.3d at 90.

Although § 2250(a) could still exceed Congress's commerce power indirectly if the underlying registration requirement were invalid, that registration requirement is justified by a combination of the Commerce Clause and the Necessary and Proper Clause. *United States v.*

19

*Cabrera-Gutierrez*, 756 F.3d 1125, 1131-32 (9th Cir. 2014); *United States v. Pendleton*, 636 F.3d 78, 86-88 (3d Cir. 2011); *Guzman*, 591 F.3d at 90-91; *Ambert*, 561 F.3d at 1211-12. Under the Necessary and Proper Clause, Congress has the power "to make all laws which shall be necessary and proper" to carry out its other powers. U.S. Const., art. 1, § 8, cl. 18. As the Court has just explained, Congress has the power under the Commerce Clause to track sex offenders who move between states. "Requiring sex offenders to update their registrations due to intrastate changes of address or employment status is a perfectly logical way to help ensure that states will more effectively be able to track sex offenders when they do cross state lines." *Guzman*, 591 F.3d at 91. Thus, "[s]ection 16913 is reasonably adapted to the attainment of a legitimate end under the commerce clause." *Ambert*, 561 F.3d at 1212. In sum, the registration requirement in 42 U.S.C. § 16913 and the criminal offense in 18 U.S.C. § 2250 do not exceed Congress's commerce power.

## CONCLUSION

For the reasons discussed above, the Court will deny defendant's motion to dismiss Counts One, Three, Four, Six, Seven, and Nine of the indictment. A separate Order accompanies this Memorandum Opinion.

/s/ *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date: June 9, 2017